UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

GLOBAL BEAUTY GROUP, LLC and MOD
BEAUTY, LLC,

Plaintiffs,

v.

VISUAL BEAUTY, LLC; TPR HOLDINGS,
LLC; STACEY SCHIEFFELIN, individually;
and DAVID SCHIEFFELIN, individually,

Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 12, 2018

16 Civ. 9214 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Global Beauty Group, LLC ("Global Beauty") and MOD Beauty,

LLC ("MOD Beauty") (together, "Plaintiffs"), bring this diversity action against

Visual Beauty, LLC ("Visual Beauty"), TPR Holdings, LLC ("TPR"), Stacey

Schieffelin, and David Schieffelin. The gravamen of Plaintiffs' claims is that

they were deceived into selling their stakes in the now-dissolved company YBF

Beauty, LLC ("YBF") based on misrepresentations about YBF's financial health

and future viability. Plaintiffs raise claims of fraudulent inducement and

breach of fiduciary duty against Stacey and David Schieffelin (together, the

"Schieffelins"),[1] their former partners in YBF, and claims of tortious

interference with business relations and civil conspiracy against Visual Beauty

---

[1]    Unless otherwise indicated, references to "Schieffelin" in the singular are to David
Schieffelin.

and TPR, the entities involved in the subsequent repurchase of YBF's assets.[2] Visual Beauty and TPR (together, the "Moving Defendants") now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint (or "FAC"), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. For the reasons that follow, the Court grants this motion.

## BACKGROUND[3]

### A.     Factual Background

Before it was sold, YBF was a beauty and cosmetics supplier that sold products in the United States and abroad online and through television shopping networks. (FAC ¶ 9). Plaintiffs and the Schieffelins were, together, the owners of YBF — Plaintiffs each had a 25% stake and the Schieffelins had a 50% stake. (*Id.* at ¶ 12). Jack Sandbach was the managing member of Global Beauty, and Howard Sherman was the managing member of MOD Beauty. (*Id.* at ¶ 13).

In early 2016, David Schieffelin approached Sandbach and Sherman about the possibility of buying Plaintiffs' interests in YBF; he represented to them that he planned to use money from "family members" to buy Plaintiffs

---

[2]     As of the date of this Opinion, Stacey Schieffelin and David Schieffelin have not been served with either pleading filed in this case. No one has entered an appearance on their behalf and they take no part in the instant motion.

[3]     This Opinion draws its facts from the First Amended Complaint (the "FAC" (Dkt. #33)), and assumes all well-pleaded allegations to be true for purposes of this motion. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). For ease of reference, the Court refers to the Moving Defendants' opening brief as "Def. Br." (Dkt. #40), to Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #42), and to the Moving Defendants' reply brief as "Def. Reply" (Dkt. #44).

out. (FAC ¶¶ 14-15). Plaintiffs allege that Schieffelin characterized YBF as a "fledgling company with dim future prospects." (*Id.* at ¶ 15). "In reliance upon" these representations, Plaintiffs "agreed to consider an offer from the Schieffelins" to buy their stakes in YBF. (*Id.* at ¶ 18). On March 29, 2016, Schieffelin sent an email to Sandbach attaching a term sheet for the proposed deal. (*Id.* at ¶ 19). The next day, on March 30, 2016, Schieffelin sent another email to Sandbach and Sherman; this email stated that "YBF's 2015 profit and loss statement showed that YBF had lost approximately $290,000.00" and that "YBF's financial outlook for 2016 was 'break-even at best.'" (*Id.* at ¶ 20).

Ultimately, on April 28, 2016, Plaintiffs entered into a Membership Interest Transfer Agreement (the "MITA") to sell their interests in YBF to the Schieffelins. (FAC ¶ 21). Under the MITA, the Schieffelins paid $242,493.29 for Global Beauty's interest in YBF and $145,000 for MOD Beauty's interest in YBF. (*Id.* at ¶¶ 22-23). The total purchase price was $387,493.29. (*Id.* at ¶ 24). The MITA further provided that the Schieffelins would satisfy YBF's outstanding line of credit at Provident Bank in the amount of $432,602.05. (*Id.* at ¶ 25).

"Unbeknownst to [Plaintiffs], at the same time that [Schieffelin] approached Sandbach and Sherman about the sale of [Plaintiffs'] membership interests, the Schieffelins were in simultaneous discussions with TPR to sell YBF in its entirety to TPR." (FAC ¶ 16). Plaintiffs further allege that "TPR encouraged and conspired with the Schieffelins to engage Sandbach and Sherman in discussions regarding the sale of [Plaintiffs'] membership interests

at a price below fair market value by depicting YBF as a company with limited future prospects," and, further, that it did so "[w]ith knowledge of the business relationship between [Plaintiffs] and the Schieffelins[.]" (*Id.* at ¶¶ 17, 28). The Schieffelins allegedly concealed these negotiations despite knowing that the possibility of a buyout from TPR would increase the value of YBF. (*Id.* at ¶ 29).

On May 3, 2016, five days after the execution of the MITA, TPR formed Visual Beauty "for the purpose of serving as a shell company for the purchase of YBF." (FAC ¶¶ 31-32). The following day, May 4, 2016, the Schieffelins — now the sole owners of YBF — sold the company to Visual Beauty pursuant to an Asset Purchase Agreement (the "APA") for $845,095.34. (*Id.* at ¶¶ 33-34). YBF was thereupon dissolved. (*Id.* at ¶ 38). The APA provided that the proceeds of the sale would be divided up as follows: (i) $242,493.29 to Global Beauty; (ii) $145,000 to MOD Beauty; (iii) $432,519.12 to Provident Bank; (iv) $25,000 to Stacey Schieffelin as a signing bonus; and (v) transfer and escrow fees of $82.93. (*Id.* at ¶¶ 35, 39). Further, the APA provided that "TPR agreed to provide $3,500,000.00 in working capital 'as needed'" in the form of a "loan." (*Id.* at ¶ 36). Plaintiffs allege they were never informed of the deal, and, further, that TPR and Visual Beauty "conspired and acted in concert" with the Schieffelins "to commit the unlawful acts of fraud, fraud in the inducement[,] and tortious interference to induce [Plaintiffs] to sell their respective interests

in YBF to the Schieffelins and, by extension, TPR/Visual, at an extensive discount relative to fair market value[.]" (*Id.* at ¶ 44).[4]

## B.    Procedural Background

Plaintiffs filed the Complaint in this case on November 29, 2016.  (Dkt. #1).  On March 16, 2017, Visual Beauty and TPR sought leave to file a motion to dismiss (Dkt. #21), and Plaintiffs opposed the application (Dkt. #24).  Following a pre-motion conference with the Court, Plaintiffs filed the Amended Complaint on May 10, 2017.  (Dkt. #32).  The Moving Defendants filed their motion to dismiss on June 2, 2017.  (Dkt. #36).  Plaintiffs filed their opposition thereto on July 7, 2017 (Dkt. #37), and Defendants filed their reply in support of their motion on July 21, 2017 (Dkt. #38).[5]

## DISCUSSION

## A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  To meet this burden, a

---

[4]    Plaintiffs' decision to focus on the purported understatement of the fair market value of their respective shares in YBF is curious, inasmuch as there are no non-conclusory allegations concerning this understatement.  That is, the FAC recites the $242,493.29 figure that the Schieffelins, and then TPR, paid for Global Beauty's shares, and the $145,000 figure that the Schieffelins, and then TPR, paid for MOD's shares.  (*See* FAC ¶¶ 22, 23, 39).  However, it never explains why those figures were understatements of the fair market value of each Plaintiff's shares — for example, by showing subsequent valuations — but rather simply recites that Plaintiffs received "an extensive discount relative to fair market."  (*See, e.g.*, FAC ¶ 72).

[5]    Both sides had to re-file their moving papers to comply with the Court's Electronic Case Filing system's rules.  As noted in Footnote 1, the re-filed opening brief appears at Docket Entry 40, the opposition brief is at Docket Entry 42, and the reply brief is at Docket Entry 44.

pleading need not set forth "detailed factual allegations," but must rest on more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. When evaluating a complaint, a court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brown Media Corp.* v. *K&L Gates, LLP*, 854 F.3d 150, 156-57 (2d Cir. 2017). This obligation does not extend to legal conclusions couched as factual allegations. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, LLC* v. *Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). This is because there is, at this early stage in the proceedings, no "probability requirement" that the plaintiff's account of the facts is the more likely version; simply, Plaintiffs need to plead sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556-67).

**B.    Analysis**

Taking Plaintiffs' well-pleaded factual allegations as true, it appears that Plaintiffs may have a claim against the Schieffelins arising from the sale of their shares in YBF. However, the Schieffelins have yet to be served and the Court is left to consider whether Plaintiffs have pleaded viable claims against the Moving Defendants. As set forth the remainder of this Opinion, the Court concludes that they have not. Plaintiffs strive to bootstrap liability by means of

pleading contrivances, such as New York's common-law tort of civil conspiracy, but the facts as pleaded cannot support such claims.

### 1. Plaintiffs Cannot Plead a Viable Claim for Tortious Interference with Business Relations

Plaintiffs' third cause of action is the first to mention the Moving Defendants, and it raises a claim of tortious interference with business relations. (FAC ¶¶ 62-69). Specifically, Plaintiffs allege that the Moving Defendants knew of Plaintiffs' business relationship with the Schieffelins and knowingly and intentionally negotiated a transaction with the Schieffelins to buy YBF, thereby causing the Schieffelins to induce Plaintiffs to sell their stakes in YBF at an amount below fair market value. (*Id.*).[6]

To raise a claim under New York law for tortious interference with business relations — sometimes called tortious interference with prospective economic advantage — a plaintiff must allege that "[i] the plaintiff had business relations with a third party; [ii] the defendant interfered with those business

---

[6]    The FAC suggests that Plaintiffs' dealings with the Schieffelins as co-owners of YBF were governed by the YBF Beauty LLC Amended and Restated Limited Liability Company Agreement, dated September 21, 2009. (FAC ¶ 38). Plaintiffs do not allege tortious interference with this agreement; instead, they allege interference with Plaintiffs' business relations with the Schieffelins. (*Id.* at ¶ 64). Plaintiffs describe their relationship with the Schieffelins as one established "through contract and/or at law" (*id.*), but without the contract in the record before it, the Court cannot establish whether the business relationship at issue here — between Plaintiffs as potential sellers and the Schieffelins as potential buyers — is governed by the contract mentioned in the FAC. Taking all allegations as true and drawing all inferences in Plaintiffs' favor as it must, the Court assumes that Plaintiffs' relationship with the Schieffelins as it relates to the potential sale of YBF was not a contractual arrangement and can be redressed through a claim of tortious interference with business relations. *See NBT Bancorp Inc.* v. *Fleet/Norstar Fin. Grp. Inc.*, 87 N.Y.2d 614, 621 (1996) (setting out the difference between tortious interference with contract and tortious interference with business relations). And, importantly, it is well-settled in New York that the absence of a valid contract is not an obstacle to a cause of action for tortious interference with business relations. *Scutti Enters., LLC* v. *Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).

relations; [iii] the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and [iv] the defendant's acts injured the relationship." *16 Casa Duse, LLC* v. *Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (internal quotation marks and citation omitted). The Moving Defendants challenge Plaintiffs' allegations as to the first and third elements.

The parties first dispute whether Plaintiffs have identified a business relationship with which the Moving Defendants interfered. The New York Court of Appeals has explained that the conduct complained of must be "directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp.* v. *Noonan*, 3 N.Y.3d 182, 192 (2004). To that end, Plaintiffs must identify a third party with whom they had, or sought to have, a business relationship. *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 114-15 (2d Cir. 2010). The Moving Defendants argue that "Plaintiffs fail to identify any sort of business relationship that would have come to fruition absent the [Moving Defendants'] alleged interference[.]" (Def. Br. 8). Plaintiffs respond that the FAC "alleges that [] Plaintiffs had a 'business relationship' with and among the Schieffelins and YBF, by virtue of their ownership interests in YBF." (Pl. Opp. 6).

The Moving Defendants' ultimate point on this score appears to be that they cannot be held liable for interfering with a business relationship that they in fact created. (*See* Def. Br. 8-9). Their point is well-taken, but the fact remains that the FAC alleges an ongoing business relationship between Plaintiffs and the Schieffelins sufficient to meet Plaintiffs' minimal burden at

this stage. (*See* FAC ¶ 11). *Cf. Dentsply Int'l Inc.* v. *Dental Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2016 WL 3676686, at *6 (S.D.N.Y. July 5, 2016) ("[The Complaint] does not identify any third party with whom Dentsply had current or prospective business relations[.]"); *Plasticware, LLC* v. *Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2012) ("Plaintiff has not adequately alleged *specific* business relationships with which Defendant allegedly interfered."). That the Moving Defendants caused the relationship between Plaintiffs and the Schieffelins to grow or change in focus does not change the Court's analysis that Plaintiffs have adequately pleaded the existence of a relationship with identified third parties.

The parties also dispute the third element of Plaintiffs' claim — namely, whether the FAC contains sufficient facts to establish that the Moving Defendants acted for a wrongful purpose or used dishonest, unfair, or improper means to cause the Schieffelins to negotiate an unfair price for Plaintiffs' stakes in YBF. "Wrongful means" in this setting may include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Carvel*, 3 N.Y.3d at 191 (quoting *Guard-Life Corp.* v. *Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) (quoting Restatement (Second) of Torts § 768 cmt. e)).

Under *Carvel*, the general rule is that a plaintiff must establish that a defendants' conduct "amount[ed] to a crime or independent tort." 3 N.Y.3d at 190. However, the *Carvel* Court recognized an exception to the rule: Where a plaintiff cannot show such conduct, he may still recover if he can establish that

the defendant "engage[d] in conduct 'for the sole purpose of inflicting intentional harm on plaintiff[].'" *Id.* at 190 (quoting *NBT Bancorp, Inc.* v. *Fleet/Norstar Fin. Grp., Inc.*, 628 N.Y.S.2d 408 (Table) (3d Dep't 1995), *aff'd*, 87 N.Y.2d 614 (1996)). Subsequent decisions have underscored that "this exception is narrow," and does not apply where "a defendant has acted with a permissible purpose, such as 'normal economic self-interest' … even if the defendant was 'indifferent to the plaintiff's fate.'" *16 Casa Duse*, 791 F.3d at 262 (alterations omitted) (quoting *Carvel*, 3 N.Y.3d at 190); *see also RFP LLC* v. *SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2008) ("If [the defendants'] interference was intended, at least in part, to advance their own competing interests, then there was no wrongful purpose." (internal quotation marks and alterations omitted)).

Here, Plaintiffs have not alleged any criminal or tortious conduct by the Moving Defendants. The FAC does not allege any physical violence, civil suits or criminal prosecutions, or any degree of economic pressure. It alleges only that the Moving Defendants (i) knew of Plaintiffs' and the Schieffelins' joint ownership of YBF, (ii) approached only the Schieffelins to negotiate a sale "without including the other members of YBF," and (iii) "maliciously directed the Schieffelins to negotiate with [Plaintiffs] … so that [the Moving Defendants] could subsequently purchase all of the membership interests of YBF at a material discount relative to fair market value[.]" (FAC ¶¶ 64-65). The Moving Defendants maintain that they "permissibly act[ed] to advance their own economic self-interest," and, "thus, wrongful means have not been shown."

(Def. Br. 11). Plaintiffs counter that the Moving Defendants employed "wrongful means" by "devis[ing] a scheme under which the Schieffelins would make misrepresentations and fraudulent statements and omissions to the Plaintiffs." (Pl. Opp. 6).

A representation is fraudulent, and can form the basis of a claim for tortious interference, where "to the knowledge or belief of its utterer, [the representation] is false in the sense in which it was intended to be understood by its recipient." RESTATEMENT (SECOND) OF TORTS § 767 cmt. c. But while the Second Circuit has observed that misrepresentations can be a form of "wrongful means" under New York law, courts have struggled to find facts showing misrepresentations that amount to the "'more culpable' conduct discussed by the New York Court of Appeals in *Carvel.*" *Friedman* v. *Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (summary order) (quoting *Carvel*, 3 N.Y.3d at 190); *see id.* (holding that "not just *any* misrepresentation is sufficient to state a claim"); *G.L.M. Sec. & Sound, Inc.* v. *LoJack Corp.*, No. 10 Civ. 4701 (JS) (ARL), 2011 WL 4594825, at *12 (E.D.N.Y. Sept. 30, 2011) (holding that persuasion alone is not enough to prove tortious interference by misrepresentation); *Semple* v. *Eyeblaster, Inc.*, No. 08 Civ. 9004 (HB), 2009 WL 2709281, at *4 (S.D.N.Y. Aug. 27, 2009) (holding that misrepresentations were insufficient to establish wrongful means); *Friedman* v. *Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170-71 (S.D.N.Y 2008) ("misrepresentations alone do not constitute 'wrongful means' *per se* under *Carvel*"). *But see Sidney Frank Importing Co., Inc.* v. *Beam Inc.*, 998 F. Supp. 2d 193, 212-13 (S.D.N.Y. 2014)

(finding tortious interference where defendants misrepresented the nature of the plaintiff's product to distributors).

More to the point:  Plaintiffs do not allege that the Moving Defendants made any misrepresentations to the Schieffelins, but rather allege that *the Schieffelins* made the misrepresentations to Plaintiffs.  (FAC ¶ 65 ("[The Moving Defendants] also knowingly and maliciously directed the Schieffelins to negotiate with [Plaintiffs] for the purchase of their respective membership interests in YBF[.]"); *see id.* at ¶ 15 ("[Schieffelin] represented that family members were going to provide him with the funds to buy [Plaintiffs] out.")). On these facts, the Court cannot find that the Moving Defendants made any misrepresentations — and certainly none that rise to the level of "wrongful means" — to the Schieffelins with the aim of inappropriately interfering with Plaintiff's business relationship with their YBF co-owners.

Having found that Plaintiff has not met its burden to show "wrongful means," the Court considers whether Plaintiffs can nevertheless prevail by showing that the Moving Defendants acted "for the sole purpose of inflicting intentional harm on plaintiffs."  *Carvel*, 3 N.Y.3d at 190 (internal quotation marks and citation omitted).  Plaintiffs' own allegations negate such a claim:  If, as alleged, the Moving Defendants encouraged the Schieffelins to broker a deal to buy Plaintiffs' stakes at a discount, and thus permit "the [Moving Defendants to] subsequently purchase … YBF at a material discount" (FAC ¶ 65), then the Moving Defendants could not, by Plaintiffs' own telling, act for the *sole* purpose of inflicting harm on Plaintiffs.  (*See* Def. Br. 11).

In short, Plaintiffs have not shown that the Moving Defendants engaged in conduct that is sufficiently culpable to sustain a claim for tortious interference with business relations.  Accordingly, this claim is dismissed.

### 2.  Plaintiffs Have Not Alleged a Viable Claim for Civil Conspiracy

Plaintiffs' fourth cause of action alleges that the Moving Defendants "conspired and acted in concert" with the Schieffelins "with a common objective to commit the unlawful acts of fraud in the inducement and tortious interference with the business/contractual relationships between the Schieffelins [and Plaintiffs] as members in YBF."  (FAC ¶ 71).[7]  A claim for civil conspiracy under New York law depends, in the first instance, on proof of a separate, underlying tort.  *Uni-World Capital, L.P.* v. *Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 251 (S.D.N.Y. 2014).  After showing the elements of the primary tort, Plaintiffs must establish "[i] an agreement between two or more parties; [ii] an overt act in furtherance of the agreement; [iii] the parties' intentional participation in the furtherance of a plan or purpose; and [iv] resulting damage or injury."  *Id.* (quoting *World Wrestling Fed'n Entm't, Inc.* v. *Bozell,* 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001)).

---

[7]     The Moving Defendants argue that Plaintiffs' breach of fiduciary duty claim is not a sufficient predicate for a claim for civil conspiracy.  (Def. Br. 12-13).  The FAC does not name the breach of fiduciary duty claim as a possible predicate tort, but the Moving Defendants address it in an abundance of caution.  They explain that "in order to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff."  (*Id.* at 12 (quoting *Briarpatch Ltd. L.P.* v. *Geisler Roberdeau, Inc.*, No. 99 Civ. 9623 (RWS), 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007))).  They further argue that the FAC fails to plead that TPR or Visual Beauty owed any fiduciary duty to Plaintiffs.  (Def. Br. 13).  While the Moving Defendants appear to state the law correctly, the Court will not address this point further, as Plaintiffs have not raised it in their pleading or in their opposition brief.

Because Plaintiffs have not stated a claim for tortious interference with a business relationship, this tort cannot form the basis of Plaintiffs' civil conspiracy claim. *See Filler* v. *Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) (summary order) ("A claim of conspiracy 'cannot stand alone' and must be dismissed if the underlying independent tort has not been adequately pleaded." (citation omitted)). Plaintiffs likewise fail to state a claim of tortious interference with contract. For this, Plaintiffs must establish "[i] the existence of [a] valid contract with a third party, [ii] defendant's knowledge of that contract, [iii] defendant's intentional and improper procuring of a breach, and [iv] damages. *White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*, 8 N.Y.3d 422, 426 (2007).[8]

While the FAC makes passing reference to a contract between Plaintiffs and the Schieffelins (*see* FAC ¶ 38), it is devoid of any allegation that the Moving Defendants (i) knew about this contract or (ii) intentionally or improperly procured its breach. To be sure, Plaintiffs allege that the Moving Defendants worked with the Schieffelins to cheat Plaintiffs out of the fair value of their shares in YBF, but, as noted earlier, the FAC is silent regarding the scope and provisions of any contract between Plaintiffs and the Schieffelins. Given these pleading gaps, the Court cannot assess whether there has been any breach, much less an intentional one.

---

[8]  New York law accords greater protection to an existing contractual relationship than a prospective business relationship. *See White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Even here, however, a defendant can raise "the economic interest defense — that it acted to protect its own legal or financial stake in the breaching party's business." *Id.*

Plaintiffs do, however, adequately state a claim for fraudulent inducement sufficient to satisfy the first element of their civil conspiracy claim. Here, Plaintiffs must show "a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." *Gosmile, Inc.* v. *Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010). The FAC alleges that the Schieffelins misrepresented (i) "that YBF business operations were stagnant and that future business prospects were limited at best" and (ii) the source of the funds used to buy out Plaintiffs' stakes in YBF — all while omitting any reference to their ongoing negotiations with the Moving Defendants. (FAC ¶¶ 47-48). Plaintiffs allege that these misstatements were made knowingly and, further, that Plaintiffs "relied upon the Schieffelins' misrepresentations and/or omissions to their detriment by entering into the MITA and selling their respective membership interests in YBF for less than fair market value." (*Id.* at ¶ 52).

Defendants argue that these allegations do not suffice under the Rule 9(b) heightened pleading standard. (Def. Br. 13).[9] Defendants contend that Plaintiffs have not alleged how or why David Schieffelin's statements were fraudulent and that the statements are not actionable in fraud insofar as they

---

[9]     Plaintiffs do not contest the application of the Rule 9(b) pleading standard to the underlying claim for fraudulent inducement, but they argue that it should not apply to Plaintiffs' claim for civil conspiracy. (Pl. Opp. 11 n.1). While Plaintiffs must meet the Rule 9(b) pleading standard for the underlying tort of fraudulent inducement, *see United States ex rel. Kolchinsky* v. *Moody's Corp.*, No. 12 Civ. 1399 (WHP), 2017 WL 3841866, at *3 (S.D.N.Y. Sept. 1, 2017), their claim for civil conspiracy — which does not, itself, sound in fraud or mistake — is subject to the more liberal pleading standard under Rule 8, *see Amusement Indus., Inc.* v. *Stern*, 693 F. Supp. 2d 327, 355 n.15 (S.D.N.Y. 2010); *Medtech Prods. Inc.* v. *Ranir, LLC*, 596 F. Supp. 2d 778, 794 (S.D.N.Y. 2008).

are mere opinions or predictions about the future profitability, or not, of YBF. (*Id.* at 13-15).  Defendants also argue that Plaintiffs have not adequately demonstrated reliance.  (*Id.* at 16).  Plaintiffs, on the other hand, argue that a "fraudulent inducement claim can be sustained upon an allegation that, while forward looking, relates 'to a past or existing fact … as distinguished from a mere estimate or expression of opinion.'"  (Pl. Opp. 11 (quoting *Zanani* v. *Savad*, 630 N.Y.S.2d 89, 89 (2d Dep't 1995))).  More specifically, Plaintiffs contend that Schieffelin's statements "related to past and existing facts" regarding YBF's financial health, the Schieffelins' negotiations with the Moving Defendants, and the Moving Defendants' offer to provide funding to YBF.  (*Id.*).

Plaintiffs have the better of the argument.  Plaintiffs allege that David Schieffelin made an offer to purchase their respective stakes in YBF; he represented to them that the purchase was being funded with money from family members; and, in support of his offer, Schieffelin provided YBF's 2015 profit and loss statement showing a loss of approximately $290,000.  (FAC ¶¶ 15, 19-20).  While Schieffelin's statements characterizing YBF as a "fledgling company" whose 2016 performance would be "break-even at best" are opinions and forward-looking predictions, the Court agrees with Plaintiffs that these statements are connected to a present fact — namely, YBF's 2015 losses — and misleadingly omit the prospect, known only to the Schieffelins, that an outside investor was offering funding that could affect YBF's financial future.  These statements are therefore actionable in fraud.  *See Cohen* v. *Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("[A] relatively concrete representation as to a

company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud."); *see also Le Metier Beauty Inv. Partners LLC* v. *Metier Tribeca, LLC*, No. 13 Civ. 4650 (JFK), 2015 WL 769573, at *6-7 (S.D.N.Y. Feb. 24, 2015) (holding that misrepresentations were not mere opinions where they related to present facts regarding company's business).

The Moving Defendants further argue that "Plaintiffs have not pled any facts alleging that YBF did not have dim future prospects, that the 2015 profit and loss statement was false, or that YBF's outlook to 'break even' in 2016 was false." (Def. Br. 14). In so doing, they miss the point of Plaintiffs' claim. True, Plaintiffs do not allege that David Schieffelin fabricated YBF's financial statements or misspoke when he claimed the company was not doing well; what Plaintiffs allege, and what this Court finds sufficient to establish a fraudulent inducement claim, is that Schieffelin knew about ongoing negotiations with the Moving Defendants to inject funding into YBF that would materially change its financial future and yet did not disclose this fact to Plaintiffs, while simultaneously exploiting YBF's lackluster performance to get Plaintiffs to sell their respective shares in the company.

The facts alleged in the FAC, taken as true, are sufficient to establish that the Schieffelins acted with an intent to deceive and induce Plaintiffs. Because intent is often difficult to establish through direct proof, "Plaintiff need not come forward with direct evidence" and, instead, need only proffer "circumstantial evidence and the legitimate inference arising therefrom."

*Century Pacific, Inc.* v. *Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (citations omitted). Accordingly, the Court looks to whether Plaintiffs "plead[] and provide[] evidence of facts that support a strong inference that the defendants possessed the requisite fraudulent intent." *Id.* at 222-23 (internal quotation marks and citation omitted). Plaintiffs allege that the Schieffelins approached them about purchasing their ownership interests in late March 2016, but made no mention of their simultaneous discussions with the Moving Defendants; Plaintiffs sold their stakes to the Schieffelins one month later on April 28, 2016 for $387,493.29; Visual Beauty was formed on May 3, 2016; and on May 4, 2016, the Schieffelins sold YBF to the Moving Defendants for $845,095.34. (FAC ¶¶ 14-33). If proven, these facts are enough to raise an inference that the Schieffelins acted with an intent to deceive the Plaintiffs into selling their ownership stakes at a price below their fair market value.

Finally, Plaintiffs allege that they relied on the Schieffelins' statements and misleading omissions in deciding to sell their ownership stakes in YBF. (FAC ¶¶ 18, 52). "Under New York law, reasonable reliance is an essential element of fraudulent inducement." *Psenicska* v. *Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009) (summary order) (citing *Fax Telecommunicaciones, Inc.* v. *Am. Tel. & Tel.*, 138 F.3d 479, 490 (2d Cir. 1998)). To survive a motion to dismiss, Plaintiffs need only plead facts that, taken as true, suggest that their reliance was reasonable. *See id.* Whether Plaintiffs' "reliance on alleged misrepresentations is reasonable in the context of [this] case is intensely fact-specific and generally considered inappropriate for

determination on a motion to dismiss." *Robinson* v. *Deutsche Bank Trust Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008) (internal quotations marks and citations omitted).

The Moving Defendants argue that Plaintiffs cannot establish reliance where they have not shown that the alleged misrepresentations concern matters "peculiarly within the [Moving Defendants'] knowledge" and where they did not take any steps to verify the statements. (Def. Br. 16). Again, the Moving Defendants miss the point. Plaintiffs do not allege that David Schieffelin lied when he told them that YBF had suffered losses in 2015; they allege that this statement, coupled with his omission of the fact that he was negotiating possible funding for YBF — a fact known only to him — was misleading and that they relied on this in making their decision to sell their stakes in YBF. (FAC ¶¶ 18-30, 52; Pl. Opp. 11). The Court finds that these allegations are sufficient to show reliance.

Accordingly, Plaintiffs state a claim for fraudulent inducement, and the Court next looks to whether Plaintiffs can establish the remaining elements of civil conspiracy: "[i] an agreement between two or more parties; [ii] an overt act in furtherance of the agreement; [iii] the parties' intentional participation in the furtherance of a plan or purpose; and [iv] resulting damage or injury." *Uni-World Capital*, 43 F. Supp. 3d at 251. Here is where Plaintiffs' claim falters. In support of this claim, Plaintiffs allege that "TPR encouraged and conspired with the Schieffelins" pursuant to a "scheme under which the Schieffelins would make misrepresentations and fraudulent statements and

19

omissions to [Plaintiffs]" to carry out the "common objective … to induce [Plaintiffs] to sell their respective interests in YBF … at an extensive discount." (FAC ¶¶ 17, 28, 72).  While the FAC does indicate that the Moving Defendants were aware of Plaintiffs' stakes in YBF (inasmuch as the amounts paid to each were made part of the APA), Plaintiffs do not allege any facts suggesting that the Moving Defendants were aware of what the Schieffelins said to Plaintiffs or of the circumstances surrounding Plaintiffs' sale of their stakes in the business.

To survive a motion to dismiss, "Plaintiffs must establish facts which 'support an inference that the [Moving Defendants] knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose." *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010) (quoting *Snyder* v. *Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521 (3d Dep't 2002)).  "Frequently, conspiracy allegations are deemed conclusory when the totality of the allegations starts and ends with a generic statement that the defendants conspired against the plaintiff." *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 461 (S.D.N.Y. 2014).  This is precisely the problem with Plaintiffs' allegations:  It is not enough for Plaintiffs to simply state that the Moving Defendants conspired and acted in concert with the Schieffelins. Plaintiffs must allege some facts that, if proven, would bear this out.  *See id.* ("[Plaintiffs] must assert specific allegations including the time, facts, and circumstances of the alleged conspiracy." (internal quotation marks omitted)).

This, Plaintiffs have not done, and their claim for civil conspiracy must therefore be dismissed.

### C.    Leave to Amend Is Denied

In a single paragraph at the end of their opposition brief, Plaintiffs state they "must be permitted leave to amend/replead." (Pl. Opp. 13). The rule in this Circuit is that leave to amend is often granted absent a showing by the non-movant of prejudice or bad faith. *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). However, where a plaintiff has not made an adequate showing to support his request to replead, a court may, in its discretion, deny leave to amend. *See, e.g.*, *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C.* v. *Actavis, Inc.*, 133 S. Ct. 2223 (2013).

At the pre-motion conference with the Court, Plaintiffs expressly requested leave to amend to attempt to obviate the Moving Defendants' proposed motion to dismiss. (April 11, 2017 Conference Transcript ("Tr.") 12:4-18). The Court discussed with the parties that leave to amend would be granted with the aim of avoiding needless motion practice. (Tr. 21:4-18). The Court is mindful that Plaintiffs had not seen the Moving Defendants' complete motion at the time they amended their complaint, but even now Plaintiffs do not specify how they would amend their pleadings to account for the deficiencies noted in the Moving Defendants' papers and in this Opinion. The Second Circuit has suggested that leave to amend may be denied on this basis. *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d at 220-21; *see also*

*TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify ... how amendment would cure the pleading deficiencies in its complaint."). Put somewhat differently, because Plaintiffs have not indicated how they would amend their pleadings, the Court finds that granting leave to amend would be futile. *See In re World Com, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004). Plaintiffs request is therefore denied.

## CONCLUSION

For the foregoing reasons, TPR's and Visual Beauty's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate these parties and the motions at Docket Entries 39 and 43. Plaintiffs are hereby ORDERED to show cause, within 30 days of the date of this Order, why the claims against David Schieffelin and Stacey Schieffelin should not be dismissed based on a failure to serve the FAC in a timely manner under Federal Rule of Civil Procedure 4(m).

SO ORDERED.

Dated:     February 12, 2018
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge